Before we begin the argument this morning, we have a motion from Judge Hughes concerning admission of two of his law clerks. I have a couple of admissions this morning. Two of my law clerks are finishing up tomorrow and starting their careers, both in California, actually. I'm going to miss them. I moved the admission of Pushkal Mishra, who is a member of the Bar and is in good standing with the highest courts of California and New York. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. And I moved the admission of Jordan Lamothe, who is a member of the Bar and is in good standing with the highest court of California. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. Judge Hughes has spoken very highly of both of you and that's good enough for me. All right, your motion is granted. Mr. Mishra and Mr. Lamothe, welcome to the Bar of this court and congratulations on your year of clerkship and thank you for your service to the court. Your Honor, you solemnly swear that you will promote yourself as an attorney and counsel at this court, uprightly and according to law, and in the support of the Constitution. Thank you. Congratulations. Now we have four argued cases this morning. The first of these is 16-2415. Esgari-Conradi v. United States. Ms. Payton. Good morning, Your Honors, and may it please the Court. In this appeal from the Eastern District of Virginia, the District Court improperly decided a patentability issue that had embedded factual questions. The District Court— What are the factual questions and where did you tell us in the brief what the factual questions were? Your Honor, the factual question related to whether the technology was well understood, routine, and conventional. And that is an issue we briefed throughout our appeal briefs and indicated that the District Court erroneously raised that issue. Where in the brief or below do you proffer the contents of expert testimony and explain how that would render the 432 patent eligible under 101? Your Honor, during the briefing on the 101 issue, on the motion to dismiss, our primary focus was on claim construction and the issue about the— Answer the question. Where in your brief do you tell us what expert testimony would disclose about this that you wanted the District Court to consider? Your Honor, we will certainly get that— I don't know. Your Honor— Well, you're at it. Where in your brief do you argue how claim construction would change the 101 inquiry? Your Honor, getting back to the earlier question, of course we'll get to your question. Our focus really isn't on the expert testimony. That was my question. Our focus is on claim construction. That was the focus of our appeal and that was the focus of our issue. So you don't rely on any expert testimony? We're not relying on expert testimony at this stage on 101 because, remember, it's taking— So you're agreeing there's no fact issue here? I'm not, Your Honor. Absolutely. Then why have you raised the fact issue? Your Honor, it's a motion to dismiss. We can't raise expert testimony at that very early stage. It's about a motion for judgment on the pleadings, and so it's improper to raise that. We can and did indicate that it's a fact issue below. How is it a fact issue if you're talking about claim construction? Claim construction absent extrinsic evidence is a question of law. It sounds like it's entirely appropriate to raise on a 12B6 motion. Your Honor, there's two pieces to your question. Let me parse them out. First, with respect to claim construction, as this Court has stated previously, often it's important to construe the claims in order to engage in the Alice analysis. And our position is claim construction needed to occur in this case. Yeah, but is this just an abstract statement? I understand that there are two points that you're making here, but now that we're on the claim construction, let's talk about that. What claim construction should the district court have done, which it didn't do, which would have made this case different from your point of view? What's the claim construction? And wasn't the claim construction that the district court used yours? Your Honor, the district court didn't use our claim construction. It didn't actually engage in claim construction. It simply stated as a conclusory statement that even if it took it in our favor, there would still be a 101 issue. What claim construction? You make these general statements that he should have engaged in claim construction. What claim construction did you suggest which would have made a difference in terms of the 101 analysis? Your Honor, the external entity, the central entity, the user, the understanding of transaction. Where do you argue that? Where in your brief do you argue that a specific claim construction should have been undertaken, which wasn't? Your Honor, we argue in our brief that there are a number of highly contested claim constructions, and each of those claim constructions are relevant to understanding the scope under Alice Step 2. Okay, but just show me where you argue for a particular claim construction  Your Honor. And let me turn you to 16 at the bottom where you say the district court purported to evaluate patent eligibility only under the constructions proposed by plaintiff's appellants. That's you, right? This was improper. It was improper for many reasons, Your Honor. For one, the district court didn't actually engage in Wait, wait, wait. Let's take one thing at a time. Where in the brief do you argue for a particular claim construction that wasn't adopted that would have made a difference? Your Honor, when we are discussing the issue in the background section, we cite a number of claim constructions. And in particular, I believe it's on page 8 of our opening brief. I'm sorry. And in addition, I'm sorry, on page 5 and 6, the district court treated independent claim 1 as representative and then went on to describe what the claim means. And I want to tie this to the second issue. Where in the brief do you argue that the district court should have adopted a particular claim construction that would benefit you? I don't see it. And you're fumbling around. You're not showing me where there is such an issue that's raised here. I will say this, Your Honor. The claim construction issue is really not the focus of our appeal. The focus of our appeal That's what you just got up here and said, that the first important thing is that this should have been done under claim construction. Let me be clear. I apologize. There are two issues here. One is there are disputed claim terms between the parties. And as this court has recognized, when there are disputed claim terms, it's improbable. Your Honor, they don't matter. If the claim construction issues don't matter, then the fact that you two may dispute it for purposes of infringement and the like does nothing to the eligibility analysis. I read what you said on page 6. That's apparently your description of what your invention does. And there's nothing in your own description on page 6 that leads me to think this is an eligible invention. Point me to where you said this specific claim construction that the district court refused to adopt would have led to a contrary conclusion on eligibility. Your Honor, there are several places where we talk about the claim constructions that matter. In particular Let's start with one. Where is it? One of the issues relates to page 21 where we talk about the technological solution to a technological problem. External entity. We describe what an external entity is. We describe what a central entity is. We describe on page 23 and 24 how claim construction is relevant to the question of whether computers are fundamentally different from humans and therefore we have a situation where you need to understand the scope of the claims in order to understand whether this was something that was cognizable. Where is the specific claim construction you say should have been adopted? Your Honor, it's implicit in the arguments we're making about what We can't deal with implicit arguments. Explicit. Where do you make it explicit that there's a specific claim construction that should have been adopted that would have helped you and that wasn't adopted? Your Honor, it's throughout the brief in the sense that we describe our understanding of the claim terms and what they mean. And with respect to And how does your understanding of those claim terms differ from what the district court relied on to reach its ineligibility analysis? Because it seems to me he described your invention in the exact same way that you do. Your Honor, actually the way he described our invention is through a hypothetical that was created by USAA. That hypothetical was then modified by the judge in order to describe what the claim terms mean and to apply 101. And that's improper. Remember the purpose of Can you give us any, I mean we spent at least five minutes trying to get specifics from you on this. External entity, for instance. Can you give us one specific example of how a claim construction of external entity based upon the claim language and the specifications would change the outcome here? Yes, Your Honor. The external entity understanding, whether it's a particular entity that's focused on goods or services and how that entity interacts with the central entity as well as the user, that helps us understand the physical, concrete nature of the external entity. That does nothing to the eligibility analysis because the abstract idea here is third-party authentication. You can describe external entity in any way you want. It can be a bank, it can be a person, it can be whatever. That's not what these claims are about. They're about third-party authentication and that's an abstract idea. And pointing to a specific computer, a specific location, and putting those conventional things and you can object all you want that they're conventional, but I fail to see how a bank and a computer aren't conventional. Those don't render the abstract idea of third-party authentication patent eligible. Your Honor. This is why claim construction doesn't matter in this case. You can tell me whatever you want to define external entity and central entity. It's not going to make this abstract idea of authentication any more concrete. It's certainly not going to improve computer functioning because this isn't directed at computer functioning. It's directed at authentication of identity. Your Honor, it is absolutely directed towards authentication of identity. And I want to get back to this question about where we raise this issue below. So in the disputed claim terms below, the question of dynamic code- The question actually was where you raised it in your blue brief. You've got to argue it in the brief if you want to preserve it. And so far you've been unable to show us any language, explicit language, saying there was a mistake about claim construction and we offered this claim construction and it wasn't adopted and it would have made a difference. You can't raise the issue without presenting it that way. I understand, Your Honor. Let me get to the second piece here relating to the embedded factual issue. That's a separate question that this Court needs to consider. I have a bunch of questions I want to ask you and I want to turn to those. Sure. About inequitable conduct. At JA3397-98 is a copy of the petition to accept an unintentionally delayed benefit claim filed before the USPTO and it's alleged to be a pro se filing by Mrs. Asghari-Kamrani. At JA3921, Mr. Kamran, Asghari-Kamrani, testified that they, quote, received a sample draft from Mr. Reese Neenstead. Am I saying that right? Yes, Your Honor. Who is appellate counsel and whose name is listed on the appellate briefs. Answers to the interrogatories also demonstrate that Mr. Neenstead had a role in preparing this allegedly pro se submission. Why isn't that a fraud by Mr. Neenstead for helping to prepare those submissions? It's not a fraud, Your Honor, because it's not inappropriate for trial counsel to help the inventors prepare a document that they then file with the USPTO. And this is something that happens regularly. It's not a violation of the rules. And what the fact testimony at trial demonstrated is the reason why they filed it pro se is because their prosecution counsel at the time was unavailable and they wanted to get it filed hastily in all due speed, given the situation with a priority claim. In the yellow brief at 20, you observed that the district, quote, the district court peppered the record with observations that, ellipsis, the USPTO operates without ethics, ellipsis, and ellipsis, the ABA model rules are practically worthless. Where does the record support either of those characterizations? Because I read it closely. Your Honor, with respect to that quote, it's an argument about the ethical issues. The quote is made up, is it not? I don't believe so, Your Honor. Then where does the judge, district judge, say the model rules are, quote, practically worthless? It is a quote from the hearing transcript and from the five-day trial, Your Honor. Where is it? I have tons of questions about the record, I have to tell you. So let me short-circuit for you. Appendix 3689, please turn to it. I apologize, Your Honor, this is a rumorous appendix. You want me to read it to you to save you the time? The ABA has pretty much eviscerated most of the tough rules. Where does the Court say they're practically worthless? You can't just make up language. And I have a bunch of questions about made-up language. Your Honor, if you look at 3689, you see that Mr. Pearson is talking about the commissioners and making an argument about the standards and ethical. I did look at it, believe me. So where does the Court say practically worthless? My recollection, Your Honor, is that is part of the larger discussion. You have the page in front of you. I do, Your Honor. You cited to it. There could have been a situation with the closing of a quote, Your Honor. I'm not seeing it on that specific page. You cited to that specific page. Let's keep going. My recollection and trial counsel's recollection is it's a quote from the trial transcript. But I understand you have another question, Your Honor. Are you testifying? I'm not, Your Honor. I'm providing my understanding. Okay. In contending that the district court demonstrated bias against your clients, you also argue that, quote, the district court forbade appellant's counsel from asking leading questions to Mr. Godich. Is that right? Godich. However, 4450 trial counsel claimed that you could ask leading questions because Mr. Godich was an adverse witness. And the district court judge rejected that position. District court said, I've already ruled he's your witness for these questions. Where did you challenge the district court's finding that Mr. Godich was not an adverse witness? Where in the record is that? Your Honor, we're not challenging that on appeal. Remember it. Okay. Then how did that demonstrate bias against your clients? Your Honor, the focus from a bias perspective is on other comments that the court made, including questioning whether the inventors were foreign, changing. Okay. Let's turn to that. It's in the other, the ensuing case after this one. But let's turn to that because I can remember the record pretty clearly. The part about being foreign, you say? Yes, Your Honor. At one point he questioned the citizenship and origin of the individual inventors. And I read that site to that page. And, in fact, it followed a line which was omitted in which the witness said that he didn't speak English very well. Isn't that correct? Your Honor, that is my recollection as well. And wasn't the court simply inquiring about the ability of the individual to speak English? I can't speak as to the court's thought about the situation. Okay. Then we'll go to that record when we get to the next case and you can explain it, because I think it's crystal clear that that's a direct misrepresentation to this Court that you're making. We disagree, Your Honor. I apologize if the Court feels that way. There was no intention to misrepresent. In the yellow brief at 21, you contend the district court made a sua sponte finding that Mr. Neenstadt had engineered a conspiracy among appellants and non-party witnesses. You cite to JA-4167 where the district court said, it's sufficient enough evidence to pose a conspiracy if I could figure out why he did it, and that's why I'm listening to all the evidence. How does that constitute a sua sponte finding of conspiracy? Your Honor, given the context and how the judge raised it, we would think that Do you understand what a finding is, like a finding of fact or a conclusion of law? I do, Your Honor. So how is that a finding? It's his view of how It's an observation by a judge. You know the difference, don't you? I understand, Your Honor. We didn't mean to imply that it's a finding of fact. You just used the word willy-nilly. Your Honor, within the context we were using it, we did not indicate that it's a finding of fact. And in fact, the issue, remember, was inequitable conduct, right? So there are certain findings of fact relating to that issue. In the gray brief at 20, USAA alleges that Mr. Neenstadt and his law firm have a direct financial state in the outcome of this litigation. And the transcript at JA4055 includes testimony from Mr. Nader Asghari. Am I saying their names correct? Asghari Qamrani, Your Honor. Yeah, Qamrani. Okay. Identifying May and Mark as having a financial interest in this litigation. Do you dispute that May and Mark, as well as Mr. Neenstadt, have a direct financial interest in this litigation? We don't, Your Honor. Our point is it's irrelevant. We're well over the time. I know. I have lots more for the other cases. Okay. Well, we'll hear from you. Thank you, Your Honors. Mr. Davis. Good morning, Your Honors, and may it please the Court. I will start briefly with the 101 appeal. The answer to Your Honor's question is we could not find anywhere in the blue brief where they specifically appealed a Markman construction issue either, and neither did they raise a specific issue in the briefing and the argument before the district court below. The court so found in the final two pages of its brief, excuse me, of its order. Here, Your Honors, the 432 patent recites an abstract idea of authenticating a user, and we don't believe that this is a case that falls under the rubric of either Berkheimer or Atrix that counsel referenced in their 28-J letter yesterday, and so we believe that the 101 decision should be affirmed. Turning to the issue of inequitable conduct, could you look at 2454 of the appendix? One of the key findings here by the district judge as to why some of these misstatements were inadvertent rather than intentional relates to the claim of priority to the 837 application, which was not co-pending. I think everybody agrees with that at this point. And what he says at the top of the page there is just as plaintiffs know that even experts in PTO procedure testify inconsistently as to whether a patent application could claim priority to claims that aren't co-pending. Is there such testimony in the record that experts have different views about whether you can claim priority to something that isn't co-pending? That's kind of a surprise to me. It is a surprise. I'm sorry, Your Honor, to the question. I think that is a surprise, Your Honor, and while I don't have a specific site in the record where that would have come up, I can tell you generally where it did. Well, I do want specific sites. Is the suggestion here correct that experts testify differently about whether it is permissible to claim priority to an application which is not co-pending, which seems to be an important building block of the district court's inequitable conduct finding? I'm not sure that there is such inconsistent testimony. Is there? I don't believe there is, Your Honor. I think what the district court was confused about, there was certainly no testimony about that in this case below in the bench trial. What happened was one of the witnesses that USAA put on was Mr. Godese. I think it's a soft C. Counsel attempted to impeach Mr. Godese with testimony they found on Westlaw or Lexis from another case. Our belief was at the time that the other side mischaracterized that testimony, and I think that the judge respectfully may have been confused about the point that they were making, but at no time in this case, in the record before this court, was there any such testimony. In fact, the testimony from Mr. Godese as well as the testimony of the plaintiff's patent law expert, also a former commissioner, Mr. Dickinson, was consistent about the co-pendency requirement. Did you raise this point in your brief? I do not believe that we raised that specific point in our brief, Your Honor. Maybe you should have. It sounds like maybe we should have. But Your Honor seizes on what we believe is the key foundation and building block of the inequitable conduct case, and that is that the district court committed an error by not beginning and looking through the lens of the fact and the law. Unless the plaintiffs here could claim priority back to the original 837 patent, there's no way that the 432 patent could be valid because it's in Hayek-Verba the same specification. And so viewed through that lens... Well, if they could trace priority back through one of the other patents, like the 129, they could get the priority date, right? Well, they could, and that's what they tried to do eventually. And that was one of the issues and one of the challenges. Obviously there were a number of issues that we raised in our briefing. One that I just want to point out that more specifically on the 129 patent is that over the course of the prosecution of these patents, even up into the trial, the plaintiffs and inventors continually switched patent lawyers, and one of the lawyers that they used was Mr. Fortcourt. And when Mr. Fortcourt took over, on the day that he took over, he actually filed a power of attorney at the patent office in the application for both the 129 and what became the 432 patent. On the same day, he filed terminal disclaimers in those two pending applications. And so any reasonable patent lawyer would know and would understand that if the same lawyer filed powers of attorneys in those two separate pending applications on the same day and entered terminal disclaimers on the same day, that that attorney understood that those were related applications. Okay, but that relates to the unintentional delay question. If they had listed, if they had claimed priority back to the 837 in the original application, relying on the 129 application, which was co-pending, what would have been wrong with that? Anything? I think the problem would have been, Your Honor, that as the PTAP subsequently found, it's not a continuation in part because No, no, I understand that, but that's just terminology to some extent that's for the benefit of the panel. Just answer my question substantively. If they had relied on the 129 in the original application and claimed priority through the 129 to the 837, would there have been anything wrong with that? I don't think there would have been anything wrong with that from an inequitable conduct standpoint. I think that the problem is that the rules at the Patent Office under 37 CFR 1.78 require that if there has been a mistake before the Patent Office and there is a delay in correcting that mistake, that you must file a sworn affidavit that says that the delay was unintentional. And the problem here is that the inventors, when they undertook something like 15 or 16 months after this litigation had begun to file that sworn declaration, they did so without talking to any of the patent attorneys who were involved in the prosecution. Under the inequitable conduct standard, why doesn't that still lead to a reasonable or slightly less reasonable inference that they were just incompetent rather than committing a fraud on the Patent Office? Your Honor, that's a great question. And I think the answer is that if there were that one isolated incident and nothing further, we would have a much more difficult argument. But that's not the facts as they're presented. We're presented now with facts where the court was required to look at the totality of the circumstances. And we've got the inventors filing this so-called pro se. And I'm concerned when you say that they didn't talk to any of the attorneys. Given the totality of these circumstances, I'm not at all sure that's true. I think they may have talked to counsel. Your Honor, in our view there were, and frankly in the district judge's view, he stated from the bench, there was something that was very unusual that was going on in this case, and we'll get to this in the fees portion, but he said he'd never seen anything like this in his 30 years on the bench and his 30 years in practice. Your basic problem, it seems to me, is they could have gotten the priority claim back to the 837 if they'd done it right, which I think you agree. And what we're dealing with is whether doing it wrong is evidence of effort to mislead the patent office as opposed to evidence of incompetence. And we've got a factual finding here by the district court, basically, that the result of incompetence. It's hard to overcome that, it seems to me. I recognize and acknowledge that fact, Your Honor. I think the only response is that under Theracent's, while it's true that we can't meet our burden if there is an equally reasonable alternative, the problem that we have is that given the number of attorneys and the number of acts that occurred over the number of years, it becomes more and more difficult to say that what they did was reasonable and was isolated. Your Honor, it was not one isolated incident, and many of these occurred after the lawsuit was filed, engaged with or with the assistance of contingency fee counsel who was representing them in this litigation. And that really, at the end of the day, became, in our view, what the major issue was. And frankly, Your Honors, as we said in our brief, after the district judge issued his 101 decision, we would not have expected to have even gone forward and been here. The problem that we had on behalf of our client is that when they approached the plaintiffs and asked for a SuperSAC letter, the plaintiffs refused to give it to them, and we knew that they had continuation applications pending. And since this trial occurred in April of 2016, two additional patents in this family have issued, and my understanding is that there are another six applications that are pending at the Patent Office now. And so that's really why we're here on behalf of USAA, because USAA just wanted to make it stop. Are they all about third-party authentication? They are either identified as continuations or continuations in part and have a substantially identical... Are they all just going to be invalid under 101 anyway? If this court affirms, I think that's right. All right. That sort of supersedes my question, which is how the heck are they going to get those issued? Yeah. I think if the court affirms either on the 101 issue or in the subsequent appeal that my colleague, Mr. Countryman, is handling, then that becomes less of an issue going forward for our client. So unless there are further... Okay. Thank you, Mr. Davis. Okay. Ms. Payton, we'll give you two minutes here to respond. Thank you, Your Honor. When we're talking about reviewing a district court's inequitable conduct decision, we have an abuse of discretion standard. The district court had multiple motions that were... Is there any evidence in this record that different experts in this area have different views as to whether you can claim priority to an application which wasn't co-pending? Let me make sure I understand Your Honor's question. Is it focused on whether it was improper to call it a continuation  I'm not focusing on the terminology. This original application claimed priority directly to the 837, not through the 676, but directly to the 837. The question is whether that was a misrepresentation of the patent office. One of the district court's findings here is, well, different experts have different views about whether you can claim priority to something that isn't co-pending, which is a surprise to me. I would have thought that experts pretty much agreed that you couldn't claim priority to something that wasn't co-pending. Where is the evidence that different experts had different views about whether you could trace back to something that wasn't co-pending? Your Honor, I'll say there's two pieces. One, there's the experts who were here at trial talking about whether there was fraud on the office, but really what the... One expert on your behalf testified exactly that to support the district court's conclusion. Your Honor, yes. In the transcript. Show me. He testified, I believe, that it was both art and science with respect to how this was dealt with. The district court said experts testified inconsistently as to whether patent applicants could claim priority to claims that aren't co-pending. Where is your expert saying that there was confusion or that people wouldn't know that? Because I don't see it either. Your Honor, we're actually not disputing the co-pendency situation here and that wasn't really the focus. That's not what I'm asking. The district court seemed to rely on the fact that this was really confusing and even experts wouldn't know how to go about getting priority, which has led to him to find that this was incompetent but not fraud. But I could not find a single statement from an expert that said experts or even I wouldn't know that you couldn't do it. The cite that the district court makes for that support is to your attorney characterizing and mischaracterizing testimony from the experts. Your Honor, we were not mischaracterizing. What we were trying to explain is given all of the patent attorneys that had provided testimony to the court, the patent attorney's testimony demonstrated that the question of continuity is both art and science. I'm not asking about continuity in general. I'm asking about whether you can get continuity from a patent application that's not co-pending. Is there any single expert in any of these proceedings that said it's confusing or it's questionable whether claims have to be co-pending or not? That seems to me a fundamental base rock conclusion that any expert in patent law would know. Your Honor, here, the focus of the expert testimony was... Wait, wait, wait. You're getting notes from your co-counsel. I would hope the notes would say it's here at this point in the record. Do they not? Actually, Your Honor, what trial counsel pointed out is that the focus of the expert testimony was not on the co-pendency issue. It was on whether it was proper to... So, in effect, you're saying the answer to Judge Hughes is no, there's nothing in the record that supports that. And so the district court's conclusion to that effect is error. The district court made a statement about co-pendency that was not the focus of the analysis. I think reasonable people can disagree. Wait, so if the district court's factual conclusion on this point is clear error, and that's the key basis for his support, or to support his conclusion that this was incompetence, not fraud, why shouldn't we send it back? Because the focus, Your Honor, was on whether it was improper, whether it was... What was viewing the district court's decision and his rationale? And as you say, he gets a very high degree of deference under an abuse of discretion standard, but if his decision relies on incorrect factual conclusions, then that degree of deference may be the same, but the outcome may change. Your Honor, this particular question, co-pendency, is not a factual conclusion that's relevant to their inequitable conduct claim. Expert testimony is a factual question. Your Honor, I'm actually making a different point. Their focus was on whether it was fraud on the office to fail to claim the priority through the children application. I accept that you're making a different point, but that different point has nothing to do with what Judge Hughes just said to you. So I guess we can stop here and go to the next case. Your Honor, one last point I want to make there, just to be clear, there were many factual points that the judge took into account. This was just one of them. And just because the judge might focus on a particular aspect relating to co-pendency does not mean that they've demonstrated clear error. So you're conceding it was error? Your Honor, I can't concede that it's error. I think the focus of the analysis is focused really on whether CIP or continuation is the issue. So the judge noting this co-pendency issue is frankly tangential to their inequitable conduct claim and the totality of the circumstances and the basis for the district court's decision. Okay, all right. I think that's enough. Thank both counsel. The case is submitted. Our next case is 17-25.